Charles A. COLEMAN, Plaintiff,

v.

Marvin T. RUNYON, Postmaster, United States Postal Service, Defendant.

No. 93 Civ. 4437 (WK).

United States District Court, S.D. New York.

Sept. 20, 1995.

**224**

Charles A. Coleman, Brooklyn, NY, pro se.

Serene Keiko Nakano, Mary Jo White, U.S. Attorney, S.D.N.Y., New York City, for Marvin T. Runyon, Jr.

### *MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

**SO ORDERED.**

This action, brought under Title VII, 42 U.S.C. § 2000e–5, and Section 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), alleges that defendant discriminated against plaintiff on the basis of his race, ethnic origin, age and because he had previously filed several complaints with the Equal Employment Opportunity Office of the U.S. Postal Service (hereinafter the "EEO"). Defendant now moves for summary judgment, and, for reasons which follow, we grant his motion.

### BACKGROUND

Plaintiff, a black male, is currently 61 years old. He has been employed by the United States Postal Service (hereinafter "the Postal Service") since 1962. Plaintiff has in recent years filed several complaints with the EEO regarding his position. During the time at issue in this action, plaintiff worked the graveyard shift as an electrical technician in the Postal Service's James A. Farley Center (hereinafter "JAF"). Plaintiff is still working in the same position.

The complaint alleges that on September 13, 1991, Waldemar Roebuck, plaintiff's Acting Tour Supervisor, sent him a note stating that he was scheduled to attend a one week course at the Postal Service's Technical Training Center (hereinafter "TTC"), located in Norman, Oklahoma, starting sometime that December. Complaint at 4. Plaintiff sometime later learned that the course would commence on January 22, 1992. Id.

Starting in November 1991 plaintiff applied to take leave from work during what plaintiff refers to as "batch 0." Id. at 3. Plaintiff was told on December 10, 1991 that his request was denied because he then had an insufficient balance of leave time. Id. Sometime thereafter plaintiff submitted a request for leave during "batch one." Id. at 3–4. On December 19, 1991 he was told by his immediate supervisor, Jerome Phifer, that this vacation bid was denied because Phifer believed that it was an attempt to avoid attending the TTC class which plaintiff had been scheduled to attend. Id. Plaintiff then asked to be assigned to different classes, but was told that he was ineligible for these. Id.

The complaint further alleges that on January 11, 1992, plaintiff was given a work schedule which required him to perform "204B" work at the JAF between January 10 and January 24, 1992. Id. On January 18, 1992, Phifer and Roebuck informed plaintiff that he was no longer assigned "204B" duties. Id. Plaintiff reported to work before midnight on January 20. Later that night, Phifer informed plaintiff that he was supposed to be travelling to his class at the TTC and told him that he would be taken "off the clock." Id. Plaintiff then filed a grievance with his shop steward and punched out at 2:50 a.m. Id.

Plaintiff went back to work the next night at 11:15 p.m. Id. at 5. He was told that he would not be allowed to work and was asked to see Roebuck. Id. Roebuck refused to meet with plaintiff and later arranged to have him escorted out of the JAF by Postal Police officers. Id. Plaintiff then contacted

the TTC and was told that if he reported by January 23 he would be accepted into the class. Id. Plaintiff asserts that he completed the course. Id. The complaint then states the following:

> After I returned to JAF I received a check for one week pay only, two days AWOL charges and later a seven day suspension.

Id.

Defendant has submitted the declarations of Roebuck and Phifer, as well as a number of documents in support of his motion for summary judgment. Defendant has submitted a memorandum to plaintiff from JAF plant manager Joseph P. Sala dated December 3, 1991, which states in pertinent part:

> Please be advised that your duty station as of January 22, 1992 until January 30, 1992 will be at the Main Technical Training Center in Norman, OK as indicated by the PS Form 1782 and Automated Enrollment System orders sent to you by the Maintenance Improvement Officer, Wayne Griffith. *Failure to report, as instructed by said documents, could result in disciplinary action.*

Def.Ex. 1 (emphasis supplied). According to Phifer, plaintiff was to complete a "small bar code" training class at the TTC on those dates. Phifer Decl. at ¶ 5. Defendant has also submitted a copy of the Form 1782 referred to in the memorandum which includes identical information. Def.Ex. 2.

Phifer admits having sent plaintiff home from work sometime after midnight on January 20, 1992 and that plaintiff was escorted out of the JAF by the Postal Police the following night. Id. at ¶ 7, 8. Phifer explains that these action were taken because plaintiff had been advised that he was to travel to the TTC on January 21 and to start the bar code class on January 22. Id.

Phifer also asserts that on January 22, the TTC instructor of plaintiff's course telephoned the JAF to advise it that plaintiff had called in sick and that the TTC had asked plaintiff to supply documentation. Id. at ¶ 11. On January 24, Phifer contends, plaintiff submitted to the TTC instructor a formal sick leave application for January 22nd, which was denied for lack of documentation.

Id. at ¶ 12. On January 29, Phifer issued plaintiff a one-week notice of suspension for the period March 2, 1992 until March 9, 1992 based on plaintiff's failure to follow the December 3rd memorandum from Sala and on his "absence without approved leave" from the TTC on January 21 and January 22. Id. at ¶ 13.

In his declaration, Phifer states that as of December 1991, plaintiff was the only technician in his "tour" at JAF who had not completed the bar code course. Id. at ¶ 3. Phifer explains that "[b]ar codes are used by the [Postal Service] to sort mail electronically" and that "[i]n 1992, the [Postal Service] used several types of bar code machines made by different manufacturers, all of which required specific training to use them." Id.

Phifer denies that any of his actions were based on plaintiff's race, ethnic origin or age on the fact that plaintiff had filed EEO complaints in the past. Id. at ¶ 17. Phifer asserts that he does not now recall having any knowledge of any previous EEO complaints submitted by plaintiff. Id. at ¶ 18.

In his affidavit, Roebuck asserts that he told plaintiff prior to December 3, 1991, that he had been assigned to the January TTC course. Roebuck Decl. at ¶ 4. Roebuck asserts that plaintiff responded by stating, "What you tell me doesn't mean anything. I have to see it in writing." Id. Thus Roebuck arranged for the Sala memorandum to be sent to plaintiff. Id. Roebuck acknowledges having denied plaintiff's request on December 10, 1991 for leave time during January 1991, but asserts that at the time of such denial he explained to plaintiff that he was scheduled to attend the TTC course between January 22 and January 30. Id. at ¶ 6.

Roebuck concedes that he asked the Postal Police to remove plaintiff from the JAF in the early morning of January 22nd without discussing the matter with plaintiff. Id. at ¶ 7. As Phifer's supervisor, Roebuck reviewed—and then approved—the suspension notice which Phifer had issued against plaintiff. Id. at ¶ 8. Like Phifer, Roebuck denies having taken any of the above-mentioned actions because of plaintiff's race, ethnic origin or age or because he had filed other EEO

complaints; in addition, he asserts that at the time in question he was not aware of any such complaint. Id. at ¶ 3.

Defendant points out that plaintiff, through his local union, executed a settlement with the Postal Service under which his January 29, 1992 notice of suspension was modified to a letter of warning and he was paid salary for the suspension period, which included five work days. See Def.Ex. 8 ("Prearbitration Settlement Agreement"). Plaintiff has disputed neither the existence of the settlement nor that he has received the five days' pay for the suspension period.[1]

In opposition to defendant's motion plaintiff has filed his own affidavit, several letters and numerous other documents. In his affidavit plaintiff disputes having called in sick to his TTC instructor and asserts that Phifer and Roebuck knew of his EEO complaints. Coleman Aff. at ¶ 3, 5, 6. He also asserts that prior to the time in question he had already completed all the training required for his position and that management had signed him up for the bar code class as a form of harassment. Id. at ¶ 18.

Plaintiff has also submitted a letter from his sister stating that in late December 1991, their mother, now deceased, requested that he come to Virginia to assist in her care. She claims that her mother, then 79 years old, was extremely ill and at that time needed constant attention and supervision.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted to the moving party where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 1995). Moreover, when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

■ Assuming that plaintiff has established a *prima facie* case of employment discrimination as required under *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 defendant has offered a legitimate, non-discriminatory reason for plaintiff's March 1991 suspension and for his being docked on January 21 and 22, 1991: namely, that he was being reprimanded for his failure to travel to and attend the TTC bar code class on January 21 and 22. This rationale is supported by not only by defendant's documentation but also by the complaint, in which plaintiff alleges that he was told to attend the course on several occasions but that he refused to do so.

■ Under *St. Mary's Honor Ctr. v. Hicks* (1993), —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 a plaintiff has the burden of proving by a preponderance of the evidence that the legitimate reason proffered by the defendant is not the one which actually motivated it, but instead "a pretext *for discrimination.*" —— U.S. at ——, 113 S.Ct. at 2752 (emphasis in original). Here plaintiff has failed to present any fact which might suggest that defendant's claim that he was being punished for failing to follow the directions of his supervisors was pretextual. Accordingly, we grant defendant's motion.

## CONCLUSION

For reasons stated above, we dismiss the complaint.

---

**1.** We thus note that the only monetary damages that plaintiff would be entitled to if he prevailed would be the pay refused him for January 21 and 22, 1991.